## Fixl's Appeal

*Groman & Rapoport,* for appellant.

*John H. Diefenderfer* and *Robert E. Haas,* for Commonwealth.

IOBST, P. J., December 20, 1937.—This is an appeal from two distinct assessments by the Mercantile Appraiser of Lehigh County against John Fixl.

Appellant is the owner and operator of the Guthsville Hotel, located at Guthsville, Lehigh County. On July 12, 1937, the mercantile appraiser assessed appellant as a retail dealer or vendor of goods, wares, and merchandise, under the terms of the Act of May 2, 1899, P. L. 184, as

amended by the Act of May 10, 1929, P. L. 1709, sec. 1, 72 PS §2621, and also assessed him as the owner of a building used wholly or partly for dramatic, theatrical, or vaudeville performances under the provisions of the Act of May 20, 1913, P. L. 229. Upon the refusal of his appeal by the appraiser and the county treasurer, Fixl appealed to the court of common pleas alleging that he is not engaged in either of these businesses, but, on the contrary, is merely the owner and operator of a hotel for which he is holding a license as a hotel keeper, and that therefore the mercantile appraiser had no authority to make the aforesaid tax assessments.

It is admitted by the Commonwealth that appellant has owned and operated the said hotel for the past 11 years, being engaged in the regular hotel business for the accommodation of tourists, guests, and transients partaking of the hotel service and that he has been licensed as a hotel keeper by the Commonwealth under its liquor laws. The Commonwealth, however, alleges that in addition thereto, Fixl is selling cigars, candy, tobacco, soft drinks, etc., to the general public, other than guests of his hotel and that he conducts professional entertainments. At the hearing the appellant freely admitted that he sold cigars, cigarettes, candy, soft drinks, etc., to guests at his hotel, either at the bar or at the tables where meals were served, and that he did this merely as an accommodation of his guests. He also admitted that on Saturday nights he furnished entertainment for the guests of the hotel, in the dining room, by providing an orchestra and some dancers and singers from the Rosemont Studios of this city. There is no stage in the dining room, the entertainment going on in the center of the floor space, while the guests are seated at the serving tables. No charge of any kind whatsoever is made for the enjoyment of this entertainment. In addition to his hotel license Fixl obtained a special amusement permit from the Liquor Control Board in accordance with the Act of July 18, 1935, P. L. 1246, sec. 601, para. (n), for which he paid a fee of $25.

This hotel building is one of the finest in the rural section of the county. It consists of living quarters for the Fixl family, six guest bedrooms on the second floor, a dining room accommodating about one hundred and fifty people, bar-room, and kitchen on the first floor. There is nothing about the building indicating its use for theatrical, dramatic, or vaudeville performances. The Act of 1899, supra, as amended, under which appellant was assessed as a retail dealer in goods, wares, and merchandise, reads, in part, as follows:

"That from and after the passage of this act, each retail vender of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of two dollars, and all persons so engaged shall pay one mill additional on each dollar of the whole volume, gross, of business transacted annually."

On request of the Auditor General of the Commonwealth for a construction of this act, Elkin, the Attorney General, in an opinion rendered February 14, 1900, New Mercantile Tax Law, 9 Dist. R. 117, stated: "The Act must have a reasonable and rational interpretation, and only those persons who can be properly classed as merchants or dealers in goods, wares and merchandise, and who have a permanent and fixed place of business, should be included in the mercantile appraisers' lists". The Commonwealth, admitting that the appellant is operating a hotel, is trying to also place him within the category of the aforementioned act by terming him a merchant, because he sells in his place of business articles that are commonly sold in all hotels, large or small. According to its contention appellant must be operating three distinct businesses: one, the hotel business; secondly, a mercantile business, and thirdly, a theatrical or vaudeville business. This claim is denied by appellant and it is contended by him that he operates but one business, that of a hotel, incident to which pursuit he is serving food, cigars, cigarettes, candy, and soft drinks to the

general public, as well as affording entertainment for his guests on Saturday evenings.

These respective contentions necessarily require a construction of the acts of assembly in question. Our appellate courts have said that:

"Taxing statutes should receive a strict construction (Boyd v. Hood, 57 Pa. 98) ; the words should be clear and unambiguous (Com. v. Pennsylvania Water & Power Co., 271 Pa. 456, 458) ; it is not enough to show that the absence of a tax works injustice (Callery's App., 272 Pa. 255, 257) ; nor can the words be extended by implication; and in cases of doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153; United States v. Merriam, 263 U. S. 179, 188": Commonwealth v. P. R. T. Co., 287 Pa. 190, 196. These cases are cited in Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, 163. See also Husband's Estate, 316 Pa. 361, 369. In Commonwealth v. Pennsylvania Water & Power Co., 271 Pa. 456, the court says: "The power to impose a tax is given by statute and an act relating thereto embraces such subjects only as are plainly within its terms. In other words, 'A tax law cannot be extended by construction to things not described as the subject of taxation' ".

Biddle, J., in Barton et al. v. Morris et al., 10 Phila. 360, wisely stated:

"Most of the occupations of life trench on each other, and almost every one performs some function which belongs to a business other than his own. If, by a reference to these occasional and incidental acts, his pursuit is to be determined, he could be rated and taxed under very many heads. The law, however, regards his permanent and regular occupation, and fixes his liability by that, and not by some act which naturally grows out of it. He may, of course, have two distinct callings, and render himself liable to taxation under both. A physician who should open an apothecary shop could not, probably, claim exemption from a tax on druggists because of his profes-

sion. Yet if he occasionally compounded prescriptions for his patients, it would hardly be held sufficient to constitute him a vendor of drugs".

In 32 C. J. 530, sec. 6, we find it stated:

"An innkeeper [or hotel-keeper] is a person who publicly professes that he keeps an inn, and will receive therein all travelers who are willing to pay an adequate price, and who come in a situation in which they are fit to be received. An innkeeper has also been defined as a person who makes it his business to entertain travelers and passengers, and provide lodging and necessaries for them", etc.

It is further stated at page 535, sec. 13, that:

"A person cannot become the guest of a hotel unless he procures some accommodation. However, the accommodation necessary to be procured by a person in order to constitute him a guest may consist of any form of entertainment or refreshment which the innkeeper publicly professes to serve; it is sufficient if he takes lodgings only, or food without lodging; and it has even been held that one who visits an inn merely for the purpose of obtaining liquor thereby becomes a guest", etc.

The serving of food and other articles for consumption by a hotel therefore constitutes a part of that business, and a person who partakes of these things therein, be it a full course dinner, a sandwich, cigar, candy, soft drinks, etc., without securing lodging is still considered a guest of that hotel.

In the case of Toxaway Hotel Co. v. Smathers & Co., 216 U. S. 439, the court stated at page 446:

"For the present we shall only deal with the bare question as to whether inn-keeping is within a proper definition of 'trading' or 'mercantile pursuits'. The keeping of a bar, cigar and news stand are obviously but ordinary incidents to the main business when conducted within the inn, and primarily for the convenience of guests. The maintenance of a livery and of small pleasure boats for

the accommodation of guests may also be accepted as merely incidental to that class of hotels called resorts. . . . .

"Having thus narrowed the question, we must answer that a corporation engaged principally in running hotels is not a corporation engaged principally in 'trading' or 'mercantile pursuits'. An innkeeper is one who maintains a house for the entertainment of strangers, for a reasonable compensation. . . . So long as he has room, he must receive all who may apply and are fit persons. He may not discriminate. To say that he buys and sells articles of food and drink is only true in a limited sense. Such articles are not bought to be sold, nor are they sold again, as in ordinary commerce. They are bought to be served as food or drink, and the price includes rent, service, heat, light, etc. To say that such a business is that of a 'trade' or a 'mercantile pursuit', is giving those words an elasticity of meaning not according to common usage."

In McClure, to use, v. Krumbholz & Riley, 9 Dist. R. 544, it was held by Frazer, J., that the Act of May 2, 1899, supra, does not apply to hotel-keepers licensed by the court of quarter sessions under the Act of May 13, 1887, P. L. 108, and its supplements. This latter act, referred to in the syllabus, was the well-established Brooks High License Law of this Commonwealth previously licensing hotel-keepers, and which law was superseded by the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended July 18, 1935, P. L. 1246, 47 PS §744, under which law, it is admitted by the Commonwealth, appellant is a licensee as a hotel keeper.

The assessment of the appellant under the so-called "place of amusement" Act of 1913, supra, has as little basis for it as the assessment previously referred to. Section 1 of that act reads as follows:

"That the words 'place of amusement, or dramatic or theatrical or operatic or vaudeville performance, circus or menagerie, or museum, or wild west show', as used in

this act, shall be taken to include all buildings, tents, or enclosures used wholly or partly for dramatic or theatrical or operatic or vaudeville performances or tragedies or comedies or farces, or for the exhibition of trained animals, or of circuses or menageries or museums, or wild west shows, but not to include any building or tent or enclosure, now erected, constructed or altered, and in actual use, for the exhibition of fixed or moving pictures or stereopticon views, where songs, dances, acrobatic or vaudeville acts (whether stage scenery and apparatus are employed or not) are exhibited in addition thereto, for the purpose of compelling the owner or lessee thereof to erect, alter, or construct said building as a theatre."

It is obvious that the legislature had in mind the use of a particular building or enclosure for a particular purpose enumerated therein as constituting the right to tax. Appellant conducts a hotel as plainly understood by that term. There is nothing to show, either interior or exterior, on appellant's premises that he is conducting a place of amusement. All he has is an entertainment once a week, in the dining room of his hotel, for his guests, and for this entertainment he holds a permit from the Liquor Control Board at a fee of $25.

Paragraph (*n*) of section 601 of the Pennsylvania Liquor Control Act of 1935, supra, reads in part as follows:

"It shall be unlawful for any licensee, except club licensees, to permit, in any licensed premises, dancing, theatricals, floor shows, or moving picture exhibitions of any sort, unless the licensee shall first have obtained, from the board, a special permit to provide such entertainment. . . . The board shall have power to provide for the issue of such special permits, and to collect a fee of twenty-five dollars ($25.00) for permits authorizing theatricals, floor shows or moving picture exhibitions. All such fees shall be paid into the State Stores Fund."

So, here, as in the case of mercantile pursuits, the legislature evidently did not intend to separate the entertain-

ment feature of a hotel business from its regular business, and tax it as a place of amusement under the Act of 1913, supra. What the legislature intended was to license theatres and places given over to the exhibition of shows, etc., and equipped for that purpose.

In Commonwealth v. Spiers, 51 Pa. Superior Ct. 59, under a preceding act, it was held that:

"A moving picture place cannot be taxed as a theatrical or operatic entertainment where it appears that the place is not equipped with any stage or facilities for vaudeville, and the entertainment consists only of moving pictures and illustrated songs."

In Commonwealth v. Beatty, 20 Dist. R. 986, the action was to recover the license fee provided by the Act of June 24, 1895, P. L. 249, which act provided for an annual license to be paid by the owners and lessees of buildings fitted up and used: ". . . for theatrical or operatic entertainments or for the exhibition of museums". There the court said:

"While the word 'theatre', from its etymology, might indicate any place where the public is to be entertained by looking at something, its ordinary use is to indicate a playhouse containing a stage, upon which persons appear to represent character or incident by speech or other means."

A public building occasionally used for public dances, etc., is also exempt; In re Horticultural Hall, 26 Dist. R. 988. In People v. Keller, 96 Misc. Rep. 92, 161 N. Y. Supp. 132, it was held that:

"A restaurant in which gratuitous entertainments are furnished to patrons is not a 'theater', within an ordinance requiring theaters to be licensed; a 'theater' being defined as a building especially adapted to dramatic, operatic, or spectacular representations, a playhouse, room, hall, or other place so arranged that a body of spectators can have an unobstructed view of the platform."

In Paul's Estate, 303 Pa. 330, 335, the court said:

" 'Taxation is an intensely practical matter and laws in respect to it should be construed and applied with a view of avoiding as far as possible unjust and oppressive consequences.' We said in Com. v. Pennsylvania Railroad Co. and in other cases that double taxation is never to be implied unless the implication is unavoidable."

Double taxation as well as too heavy taxation upon places duly licensed to dispense liquor and beer will eventually breed innumerable law violators by encouraging illegal sales and other vicious practices at the places thus licensed.

For these reasons we are compelled to enter judgment against the Commonwealth.

*Decree of court*

And now, December 20, 1937, in accordance with this opinion, the appeal is sustained, the mercantile assessments against John Fixl, appellant, are declared null and void, and judgment is entered in favor of appellant, and against the Commonwealth, with costs.